IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Faith Sage, as Trustee for the Next of Kin of decedent Kassondra Sage, | )<br>)<br>) |
| Plaintiff, | ) Case No. ------------<br>)<br>) |
| vs. | ) COMPLAINT AND DEMAND<br>) FOR JURY TRIAL |
| Bridgestone Americas Tire Operations, LLC, and Bridgestone/Firestone do Brasil Industrial e Comercio Ltda., and Wal-Mart Associates, Inc. | )<br>)<br>) |
| Defendants. | |

Plaintiff Faith Sage, as Trustee for the Next of Kin of Kassondra Sage, states and alleges as follows:

## THE PARTIES

1.     Plaintiff Faith Sage is a Minnesota resident residing at 1550 50th Street NE, Buffalo, MN 55313. She was appointed wrongful death trustee pursuant to Minn. Stat. § 573.02, by order of Judge Daniel C. Moreno, Hennepin County, dated September 10, 2018 (attached as Exhibit A).

2.     Defendant Bridgestone Americas Tire Operations, LLC, Successor to Bridgestone/Firestone North America Tire, LLC (hereinafter "BATO") is a corporation organized and existing under the laws of Delaware with its principal place of business at 200 4th Ave S., Suite 101, Nashville, Tennessee 37201.

3.     Defendant Bridgestone/Firestone do Brasil Industrial e Comercio Ltda. (hereinafter "Bridgestone Brazil") is a corporation organized and existing under the laws

1

of Brazil and is a subsidiary of Bridgestone Americas Tire Operations, LLC, successor to Bridgestone/Firestone North American Tire, LLC existing under the laws of Tennessee.

4. Defendant Wal-Mart Associates, Inc. (hereinafter "Walmart") is a corporation organized and existing under the laws of Delaware with its principal place of business at 702 SW 8th Street, Bentonville, Arkansas 72716.

## JURISDICTION & VENUE

5. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332 in that the residence of the plaintiff and plaintiff's decedent, Minnesota, is diverse from that of all defendants and the amount in controversy exclusive of interest and costs exceeds the sum or value specified in that section.

6. The events giving rise to this action occurred in Minnesota, and Defendants do substantial business in Minnesota, making venue and jurisdiction appropriate in the District of Minnesota.

## STATEMENT OF FACTS

7. On or about August 10, 2016 Plaintiff's Decedent Kassondra Sage was properly operating her 2001 Chrysler PT Cruiser southbound in the left lane of I-35 when suddenly without warning the right rear tire experienced a catastrophic tread separation. The vehicle became immediately uncontrollable, entering the center median and beginning to roll before exiting the median at a vault into the northbound traffic lanes. The subject vehicle was then struck by a Toyota traveling in the left northbound traffic lane which caused the body of the Chrysler to begin to separate. This separation caused the driver seat

to become detached from the subject vehicle ejecting Plaintiff's decedent from the subject vehicle. As Plaintiff's decedent was being ejected, the subject vehicle was struck in the rear by a Dodge traveling in the northbound traffic lane. Plaintiff's decedent was thrown across the median, coming to a final rest in the southbound left lane. Plaintiff's decedent suffered fatal injuries as a result of this incident (hereinafter "the occurrence").

8. The subject tire is a Wintertrax Widetrack, P195/65R15 DOT # E2C6 WWB 3501, (hereinafter "Subject Tire"). The Subject Tire was designed, manufactured, marketed and placed into the stream of commerce by Defendant BATO in a defective condition, unreasonably dangerous to foreseeable users including Plaintiff's decedent. The Subject Tire was unchanged from the time it was placed into the stream of commerce until the time of the occurrence described above.

9. In the time period on or around February 2016 the subject vehicle was serviced by Walmart when Plaintiff's decedent brought the subject vehicle in and purchased two new tires.

10. Plaintiff's decedent, Kassondra Lynn Sage, suffered fatal injuries as a result of the occurrence described above. Her Next of Kin have suffered immense damages compensable under Minnesota Statute Section 573.02.

<b><u>CAUSE OF ACTION: STRICT LIABILITY AS TO BATO</u></b>

11. At all material times, Defendant BATO was in the business of manufacturing, designing, selling and otherwise placing into the stream of commerce tires such as the Subject Tire. At all material times, and as part of its tire business, Defendant BATO was regularly engaged in business in the United States and in Minnesota by

designing, manufacturing, and selling tires which were and are intended to and do reach ultimate consumers located in Minnesota, including the Subject Tire involved in the occurrence which caused fatal injuries to Plaintiff's decedent. The Subject Tire was designed, manufactured and sold by Defendants BATO and Bridgestone Brazil and placed in the stream of commerce. The Subject Tire was manufactured at the Santo Andre-Est. Sao Paulo Brazil Plant and was designed, manufactured, marketed and placed into the stream of commerce by Defendants BATO and Bridgestone Brazil in a defective condition and was substantially unchanged from the time it was placed into the stream of commerce to the time of the occurrence.

12. The Subject Tire was unreasonably dangerous in that Defendant BATO and Bridgestone Brazil defectively designed, marketed, and manufactured the failed tire, which by its design was unreasonably dangerous for all intended and foreseeable uses. Said defect was a direct and proximate cause of the occurrence and the fatal injuries sustained by Plaintiff's decedent.

**DESIGN DEFECT**

13. The design of the Subject Tire was defective and unreasonably dangerous because it did not incorporate available features to resist initiation and growth of separation between the tire's internal components. The Subject Tire was defective by design in that it did not incorporate internal components with requisite fatigue resistance to counter the constant centrifugal force incurred in normal and foreseeable operation. The Subject Tire was defective by design in that the skim stock rubber was defectively designed. Moreover,

4

the skim stock was defective in that it prevented bonding between the internal components, thus allowing for unintended movement between the steel belts. Further, the design of the Subject Tire failed to incorporate a full nylon cap ply and/or adequate belt wedge, which would have reduced the propensity for a tread/belt separation.

14. As a direct and proximate result of the defective design of the failed Subject Tire, including but not limited to the above defects, the Subject Tire's tread/belt unexpectedly separated during normal and foreseeable use. This propensity to suddenly and violently lose the tire's tread/belt under normal and foreseeable conditions will cause persons operating the vehicle, including Plaintiff's decedent, to lose control, thus producing the catastrophic occurrence described above including the fatal injuries to Plaintiff's decedent.

**MANUFACTURING DEFECT**

15. The Subject Tire was manufactured defectively causing it to lose its tread/belt under normal and foreseeable use and operating conditions. Said tire was manufactured defectively in that the rubber between the failed tire's components was not manufactured to a specification that would withstand fatigue caused by the constant centrifugal forces incurred during normal and foreseeable operation. As a direct and proximate result of this inadequate fatigue resistance, the rubber between the tire's components tore apart, thus causing catastrophic failure and driver loss of control. The Subject Tire was further defectively manufactured in the following additional respects:

5

    a.    That the bonding of the rubber components was not uniform throughout the tire. This bonding failure was a direct and proximate cause of the initial separation between the tire's internal components, including the steel belts, and a further direct and proximate cause of the loss of control and fatal injuries sustained by Plaintiff's decedent.

    b.    That it contained gapped and overlapped belt splices, allowing the migration of air into the internal components of the tire, allowing for premature oxidative degradation. As a further direct and proximate result of this initial separation between the internal components, the separation was permitted to propagate, thus leading to catastrophic failure and loss of control of said vehicle by decedent Kassondra Sage.

16.    The aforementioned manufacturing defects were a direct and proximate cause of the occurrence described above and the fatal injuries sustained by Plaintiff's decedent.

## CAUSE OF ACTION: NEGLIGENCE AS TO BATO

17.    Defendant BATO owed a legal duty of care to Kassondra Sage and to the motoring public at large concerning the design, manufacture, marketing, inspection and sale of the Subject Tire. Defendant BATO breached its duties, and said breach was a direct and proximate cause of the fatal injuries sustained by Plaintiff's decedent.

18.    Said breaches include, but are not limited to, Defendant's failure to detect the gapped and overlapped belt splices prior to the sale of the Subject Tire. The open

gapped and overlapped belt splices were a cause of the Subject Tire to have a propensity to lose its tread/belt under normal and foreseeable use and operating conditions. Because this propensity was a direct and proximate cause of the occurrence, Defendant BATO breached its duty of care. This breached duty was a direct and proximate cause of the fatal injuries sustained by Plaintiff's decedent.

## CAUSE OF ACTION: BREACH OF WARRANTY AS TO BATO

19.     Defendants BATO and Bridgestone Brazil breached express and implied warranties of marketability and fitness for a particular purpose to the motoring public and specifically to foreseeable users including Plaintiff's decedent regarding the propensities of the Wintertrax Widetrack tire to suffer foreseeable catastrophic and unexpected tread/belt separations.

20.     Defendants BATO and Bridgestone Brazil sold and placed the Subject Tire into the stream of commerce with the representation—to the motoring public and to Plaintiff's decedent—that said Subject Tire was safe for highway use. Plaintiff's decedent used the Subject Tire in a manner it was reasonably intended to be used and which Defendants BATO and Bridgestone Brazil anticipated. Because of the aforementioned defects in the design, manufacture, marketing and Defendants' carelessness and negligence in failing to inspect, warn and instruct of the defects, the Subject Tire failed, causing fatal injuries to Plaintiff's decedent.

## CAUSE OF ACTION: STRICT LIABILITY AS TO BRIDGESTONE BRAZIL

21. At all material times, Defendant Bridgestone Brazil was in the business of manufacturing, designing, selling and otherwise placing into the stream of commerce tires such as the Subject Tire. At all material times, and as part of its tire business, Defendant Bridgestone Brazil was regularly engaged in business in the United States and in Minnesota by designing, manufacturing, and selling tires which were and are intended to and do reach ultimate consumers located in Minnesota, including the Subject Tire involved in the occurrence. The Subject Tire was designed, manufactured and sold by Defendants Bridgestone Brazil and BATO and placed in the stream of commerce. The Subject Tire was manufactured at the Santo Andre-Est. Sao Paulo Brazil Plant and was designed, manufactured, marketed and placed into the stream of commerce by Defendants Bridgestone Brazil and BATO in a defective condition and was substantially unchanged from the time it was placed into the stream of commerce to the time of the occurrence.

22. The Subject Tire was unreasonably dangerous in that Defendant Bridgestone Brazil and BATO defectively designed, marketed, and manufactured the failed tire, which by reason of its design was unreasonably dangerous for all intended and foreseeable uses. Said defect was a direct and proximate cause of the occurrence and the fatal injuries sustained by Plaintiff's decedent.

**DESIGN DEFECT**

23. The design of the Subject Tire was defective and unreasonably dangerous because it did not incorporate available features to resist initiation and growth of separation

8

between the tire's internal components. The Subject Tire was defective by design in that it did not incorporate internal components with requisite fatigue resistance to counter the constant centrifugal force incurred in normal and foreseeable operation. The Subject Tire was defective by design in that the skim stock rubber was defectively designed. Moreover, the skim stock was defective in that it prevented bonding between the internal components, thus allowing for unintended movement between the steel belts. Further, the design of the Subject Tire failed to incorporate a full nylon cap ply and/or adequate belt wedge, which would have reduced the propensity for a tread/belt separation.

24. As a direct and proximate result of the defective design of the failed Subject Tire, including but not limited to the above defects, the Subject Tire's tread/belt unexpectedly separated during normal and foreseeable use. This propensity to suddenly and violently lose the tire's tread/belt under normal and foreseeable conditions will cause persons operating the vehicle, including Plaintiff's decedent, to lose control, thus producing the catastrophic occurrence including the fatal injuries to Plaintiff's decedent.

**MANUFACTURING DEFECT**

25. The Subject Tire was manufactured defectively causing it to lose its tread/belt under normal and foreseeable use and operating conditions. Said tire was manufactured defectively in that the rubber between the failed tire's components was not manufactured to a specification that would withstand fatigue caused by the constant centrifugal forces incurred during normal and foreseeable operation. As a direct and proximate result of this inadequate fatigue resistance, the rubber between the tire's

components tore apart, thus causing catastrophic failure and driver loss of control. The Subject Tire was further defectively manufactured in the following additional respects:

    c.    That the bonding of the rubber components was not uniform throughout the tire. This bonding failure was a direct and proximate cause of the initial separation between the tire's internal components, including the steel belts, and a further direct and proximate cause of the loss of control and fatal injuries to Plaintiff's decedent.

    d.    That it contained gapped and overlapped belt splices, allowing the migration of air into the internal components of the tire, allowing for premature oxidative degradation. As a further direct and proximate result of this initial separation between the internal components, the separation was permitted to propagate, thus leading to catastrophic failure and loss of control of said vehicle by Kassondra Sage.

26.    The aforementioned manufacturing defects were a direct and proximate cause of the occurrence and the fatal injuries sustained by Plaintiff's decedent.

## CAUSE OF ACTION: NEGLIGENCE AS TO BRIDGESTONE BRAZIL

27.    Defendant Bridgestone Brazil owed a legal duty of care to Plaintiff and to the motoring public at large concerning the design, manufacture, marketing, inspection and sale of the Subject Tire. Defendant Bridgestone Brazil breached its duties, and said breach was a direct and proximate cause of the fatal injuries sustained by Plaintiff's decedent.

28. Said breaches include, but are not limited to, Defendant's failure to detect the gapped and overlapped belt splices prior to the sale of the Subject Tire. The open gapped and overlapped belt splices were a cause of the Subject Tire to have a propensity to lose its tread/belt under normal and foreseeable use and operating conditions. Because this propensity was a direct and proximate cause of the occurrence, Defendant Bridgestone Brazil breached its duty of care owed to Plaintiff's decedent. This breached duty was a direct and proximate cause of this occurrence and the fatal injuries she sustained.

## CAUSE OF ACTION: BREACH OF WARRANTY AS TO BRIDGESTONE BRAZIL

29. Defendant Bridgestone Brazil breached express and implied warranties of marketability and fitness for a particular purpose to the motoring public and specifically to foreseeable users including Plaintiff's decedent regarding the propensities of the Wintertrax Widetrack tire to suffer foreseeable catastrophic and unexpected tread/belt separations.

30. Defendants Bridgestone Brazil and BATO sold and placed the Subject Tire into the stream of commerce with the representation—to the motoring public and to Plaintiff's decedent—that said Subject Tire was safe for highway use. Plaintiff's decedent used the Subject Tire in a manner it was reasonably intended to be used and which Defendants Bridgestone Brazil and BATO anticipated. Because of the aforementioned defects in the design, manufacture, marketing and Defendants' carelessness and negligence in failing to inspect, warn and instruct of the defects, the Subject Tire failed, causing fatal injuries to Plaintiff's decedent.

## CAUSE OF ACTION: NEGLIGENCE AS TO WALMART

31. Plaintiff brings claims of negligence against Walmart based on negligent inspection, advice, and service of the Chrysler PT Cruiser and corresponding tires, including the Subject Tire. Said negligence is a proximate cause of the occurrence, and the fatal injuries sustained by Plaintiff's decedent.

32. Defendant Walmart is a business which holds itself out to be an expert with regard to tire and vehicle service. Plaintiff-decedent Kassondra Sage entrusted Walmart to provide expert advice concerning the maintenance of the Chrysler PT Cruiser and the maintenance and purchase of tires.

33. Upon inspection of the subject vehicle and tires, Walmart replaced the two front tires. However, based on the physical evidence, the Subject Tire exhibited a serious and dangerous defect: internal belt separation. Thereafter, the left rear Subject Tire failed as a result of belt separation, thus initiating the occurrence.

34. A reasonable inspection of the Subject Tire would have revealed that it was suffering from an underlying internal belt-to-belt separation. Upon discovery of the belt to belt separation, the Subject Tire should have been taken out of service. Failure to discover the defective condition of the tire, and failure to remove the tire from service constitutes negligence by Walmart.

35. Further, Walmart breached its duty, as well as industry standards, by placing the new tires on the front of the vehicle, as opposed to the rear. Walmart's own internal policies state that when two new tires are purchased they should be placed on the

rear of the vehicle. Walmart's negligence and failure to follow its own procedures was a direct and proximate cause of the occurrence and Plaintiff's decedent's fatal injuries.

WHEREFORE, Plaintiff Faith Sage as Trustee for the Next of Kin of decedent Kassondra Sage, prays for judgment against Defendants, jointly and severally, in an amount in excess of Fifty Thousand and no /100 ($50,000 .00) Dollars, for all damages allowed under Minn. Stat. § 573.02, together with interest, costs and disbursements incurred herein and for such other and further relief that the Court deems just and equitable, including pre and post-verdict interest.

**PLAINTIFF REQUESTS A JURY TRIAL.**

Dated: 11-12-18

**CONLIN LAW FIRM LLC**

By: *Stacy Deery Stennes*
Thomas J. Conlin (MN # 139555)
Stacy Deery Stennes (MN # 390735)

600 Highway 169 South
Suite 1650
Minneapolis, MN 55426
Telephone: (952) 252-0490
Facsimile: (952) 252-0489

**KASTER, LYNCH, FARRAR & BALL LLP**

Kyle Farrar (MN # 397942)
Wes Ball (pro hac admission pending)
1010 Lamar Street
Suite 1600
Houston, TX 77002
Telephone: (713) 221-8300

13

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Case Type: Other Civil

In the matter of the appointment
of a trustee for the next of kin
of Kassondra Lynn Sage,
                       Decedent.

Court File:

**ORDER APPOINTING FAITH SAGE AS WRONGFUL DEATH TRUSTEE WITHOUT BOND**

    This matter came before the Court on the Petition of Gordon Sage, and his accompanying Motion for the appointment of Wrongful Death Trustee Without Bond following the death of his daughter, Kassondra Lynn Sage, on August 10, 2016 in Steele County, Minnesota. All next of kin listed in the Petition have waived Notice of Hearing and consented to the appointment of Faith Sage as Wrongful Death Trustee Without Bond. Their signed Waivers and Consent forms have been presented to the Court.

    The Court, having considered the Petition, as well as the Consents of all of the next of kin, and finding that Faith Sage is a suitable person to serve as Trustee for the next of kin of Kassondra Sage, deceased, is hereby ordered:

1. Faith Sage is hereby appointed as Trustee without bond for the next of kin of Kassondra Lynn Sage, decedent.

2. Faith Sage shall serve a copy of this Order upon all next of kin listed in the Petition.

Dated: 9-10-18

_____
Judge of District Court

**EXHIBIT A**