```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA

---------------------------------------------------------------
 Faith Sage, as Trustee           )
 For the Next of Kin of           ) File No. 18-cv-3170
 Decedent Kassondra Sage,         )             (DSD/BRT)
                                  )
         Plaintiff,               )
                                  )
 v.                               )
                                  )
 Bridgestone Americas Tires       ) Zoom Video Conference
 Operations, LLC,                 ) Minneapolis, Minnesota
 Bridgestone/Firestone do         ) Monday, November 23, 2020
 Brasil Industrial e Comerico     ) 11:02 a.m.
 Ltda., and Walmart Inc.,         )
                                  )
         Defendants.              )
---------------------------------------------------------------

              BEFORE THE HONORABLE DAVID S. DOTY
           UNITED STATES DISTRICT COURT SENIOR JUDGE
```
                          **MOTIONS HEARING**

```
APPEARANCES:
 For Plaintiff:          CONLIN LAW FIRM LLC
 (Via Zoom)              BY:  THOMAS J. CONLIN, ESQ.
                              STACY DEERY STENNES, ESQ.
                         600 Highway 169 South, #1650
                         Minneapolis, Minnesota 55426

                         KASTER LYNCH FARRAR & BALL LLP
                         BY:  WESLEY T. BALL, ESQ.
                         1117 Herkimer Street
                         Houston, Texas 77008

 For Defendant           LARSON KING LLP
 Walmart, Inc.:          BY:  ANGELA BERANEK BRANDT, ESQ.
 (Via Zoom)              30 East Seventh Street, #2800
                         St Paul, Minnesota 55101-4922

                         NORTON ROSE FULBRIGHT US LLP
                         BY:  STEVEN DAVID JANSMA, ESQ.
                         111 W.  Houston Street, #1800
                         San Antonio, Texas 78205

 Court Reporter:         RENEE A. ROGGE, RMR-CRR
                         300 South Fourth Street, Box 1005
                         Minneapolis, Minnesota 55415
```

            Proceedings recorded by mechanical stenography;
                   Transcript produced by computer.

**P R O C E E D I N G S**

**IN COURT VIA ZOOM VIDEO CONFERENCE**

\* \* \*

THE COURT: Good morning. And take your seats, if you are standing. These days --

MR. BALL: Good morning, Your Honor.

THE COURT: Good morning.

MR. BALL: I was making sure that my kids didn't -- didn't say anything during your entry; and, of course, I'm gone while I'm trying to do that.

THE COURT: Okay. Well, with COVID and all the other things we are doing, it's just crazy as the dickens, so --

But, anyway, this morning the next matter we have on our calendar is that of Faith Sage versus Bridgestone Americas Tire Operations, LLC, and Walmart, Inc.

And now may I have appearances, please?

MR. BALL: Wesley Ball and Tom Conlin for the plaintiffs, Your Honor.

THE COURT: Good morning.

MR. CONLIN: And good morning, Your Honor. And my partner Stacy Stennes is on the line for plaintiff as well.

MS. STENNES: Good morning, judge.

THE COURT: Okay. Good morning.

MS. BRANDT: Good morning, Your Honor. Angela

1   Brandt and Steven Jansma on behalf of Walmart.
2             THE COURT:  Good morning to both of you.
3             MR. JANSMA:  Good morning, judge.
4             THE COURT:  This is -- good morning -- this is
5   defendant's motion.  I understand the defendants have
6   requested ten minutes of rebuttal and five minutes of
7   original argument.  That's a little unusual, but that's what
8   we're going to do.
9             And who is going to do the arguing?  Ms. Brandt,
10  are you?
11            MS. BRANDT:  I am, Your Honor.
12            THE COURT:  Okay.  Good.  Because you are smiling
13  as if you are in anticipation and Mr. Jansma looked like he
14  was relaxed, so I just figured out one of you.  This is the
15  great thing about Zoom, at least we get to see facial
16  expressions, not much else, but it's good.
17            But go ahead, Ms. Brandt, if you would, please.
18            MS. BRANDT:  Thank you, Your Honor.
19            Walmart is here virtually asking the court to
20  dismiss plaintiff's claim against it.
21            THE COURT:  And I should have -- I should have
22  started out by saying I've read your briefs, so please don't
23  repeat your briefs.  Okay.  Thank you.  Go ahead.
24            MS. BRANDT:  I understand.
25            THE COURT:  Good.

1          MS. BRANDT:  As you know, the two main points are
2     that plaintiff has failed to offer admissible evidence of a
3     critical and fundamental fact in the case and they have
4     failed to articulate a legal duty that exists to support
5     their claim.
6          So we know that Kassondra Sage died in a tragic
7     automobile accident after experiencing a tread separation in
8     a rear tire.  The rear tire was a snow tire manufactured and
9     sold by Bridgestone.  It was not designed or manufactured by
10    Walmart.  It was not sold or installed by Walmart.  It was
11    not inspected by Walmart.  And, critically, there's no
12    evidence that Walmart had the occasion to even see the tire
13    that was on the rear of Ms. Sage's vehicle at the time of
14    the accident.
15          THE COURT:  There is --
16          MS. BRANDT:  There is no --
17          THE COURT:  Let me interrupt you with your five
18    minutes, and I'll try to make it short.
19          There is an issue, however, of possibly an
20    obligation to inspect and an obligation to inform on the
21    part of someone who is changing tires on a car.  There are
22    cases out there and some regulation about that.  Now, I
23    don't know if it applied then, but I would like you to
24    address that particular -- those particular issues, the
25    obligation, the duty to inspect, the duty to inform.  Go

1  ahead.

2          MS. BRANDT:  Yes.  Absolutely, Your Honor.

3          So the plaintiff's allegation in this case is that
4  there was an internal defect in the tire and it was the
5  internal defect that caused the tread separation and
6  ultimately the accident.  It is Walmart's position that
7  there is no duty to inspect tires for which a customer comes
8  in and does not request service, and Walmart did not inspect
9  the tires.

10         Even if Walmart had inspected the tires under this
11 fact scenario, under plaintiff's own allegations, this
12 internal defect would have been -- would not have been
13 detectable by the service technician and would not have been
14 something that Walmart could have warned Ms. Sage about,
15 because by its very nature it is internal and it is hidden.
16 And even plaintiffs admit that there would have been no way
17 for Walmart to detect such a defect.

18         Now, the plaintiff spends the vast majority of
19 their long complaint with allegations against Bridgestone
20 and which rightly so; and now that they've settled with
21 Bridgestone, they are attempting to create a duty on the
22 part of Walmart that does not exist.

23         Critical to that analysis, though, is this
24 fundamental fact that there is no evidence of what tires
25 were on the rear of the vehicle when it was brought in for

1   service that day.  So in order to impose a legal duty on
2   Walmart to inspect tires, we need to have the basic
3   fundamental factual foundation that those tires were
4   actually even available for inspection.  So plaintiff's
5   claim fails on both from a factual standpoint, but also from
6   the legal duty standpoint.
7           The only evidence that plaintiff has attempted to
8   proffer on the issue of what tires were on the vehicle at
9   the time of the service is the decedent's father saying he
10  would have known if she changed them.  And that is not
11  admissible evidence.  That is his own speculation.
12          And if the matter were to be sent to a jury, they
13  would be asked to, first, speculate that the rear tires were
14  even on the vehicle at the time of service and then make a
15  determination whether Walmart could have -- should have
16  inspected tires for which the plaintiff did not -- or excuse
17  me -- the decedent did not request service and, secondly,
18  whether Walmart could have identified an admittedly hidden
19  defect in the tire, so --
20          Also very critical to the facts in this case is
21  that the service that occurred at Walmart happened six
22  months and 13,000 miles before the accident.  So that
23  vehicle was driven the equivalent of a year's worth of miles
24  between the date of service and the time of the -- the time
25  of the accident.  So if there had been something very

1    critical wrong with the rear tires that were on the vehicle
2    at the time of service, it stands to reason that Ms. Sage
3    would not have been able to drive on them for six months and
4    additional 13,000 miles.
5             I see that my time is up, and I will reserve the
6    rest of it for rebuttal.  Thank you.
7             THE COURT:  Okay.  Fine.  Thank you.
8             Who is going to be arguing on behalf of the
9    plaintiff?  Mr. Ball?
10            MR. BALL:  Yes, Your Honor, I will be.
11            THE COURT:  Okay.  Go ahead, if you would, please.
12            MR. BALL:  Thank you, Your Honor.
13            I'm going to go directly to what Ms. Brandt began
14   with, which is the legal duty.  And, Your Honor, the legal
15   duty here is the standard of care which is found within
16   negligence.  I think we've briefed that, and I'll rely on
17   our briefs for the discussion of that.  But as it concerns
18   the standard of care, we really look no further than
19   Walmart's presently existing safety policies as it concerns
20   Walmart's current procedures when working on a car or a
21   vehicle with tires in excess of ten years old.
22            We know from the discovery that we've done in this
23   case and from the depositions that we've taken that Walmart
24   as of, I believe, from what I've found in the facts thus
25   far, instituted a policy in 2018 concerning the inspection

1    of vehicles, which include tires that -- which include tires
2    that are more than ten years old.  That policy as Walmart
3    has it right now, that safety policy, should I say, is that
4    Walmart will not allow any of its technicians to touch a
5    tire on a vehicle that a consumer brings in, a tire that is
6    ten years or older.
7              The currently existing policy is that Walmart, if
8    they find that a vehicle has a ten year or older tire on it,
9    the safety technician is to properly advise the consumer or
10   the customer that they have a tire on their vehicle, or
11   multiple tires, if it's the case, older than ten years old
12   and then they are to recommend that any of those tires that
13   are ten years or older are to be removed from service as a
14   result of industry and internal Walmart recommendations.
15   That policy shows us and this court exactly what the
16   standard of care is as it concerns Walmart in inspecting
17   someone's vehicle when the vehicle has a tire over ten years
18   of age.
19             Walmart at the time of this incident stated -- or
20   excuse me -- at the time of the deposition stated that they
21   did not do any inspection of a vehicle or tires for safety
22   purposes.  We know that to be untrue based simply on this
23   policy and this policy alone.
24             So as it concerns a duty to warn the consumer of a
25   tire of this age, that duty exists and we can find it

1   certainly in Walmart's own policies; but in addition to
2   that, Your Honor, we can find that in industry standards,
3   which we have gone to great lengths to explain in our
4   briefs.
5              And I'll rest on that, unless the court has any
6   other questions about that that you would like us to --
7              THE COURT:  No, I don't.  Tell me -- I did not
8   read all the depositions.  Tell me the basis in fact for the
9   assumption that Walmart not only did not inspect, but did
10  not tell the consumer about the policy that you now say it
11  had.
12             MR. BALL:  Your Honor, one of Walmart's employees,
13  actually the employee who claims to have interacted directly
14  with Ms. Sage -- as a little bit of background, and his name
15  is escaping me right now, and I'm sorry for that, I will try
16  to find it, but one of the Walmart employees who I deposed
17  very clearly testified that he recalled this exact
18  interaction with Ms. Sage -- I think it was five years
19  before his deposition -- and recalls that he told Ms. Sage
20  that she should place her two new tires on the rear of the
21  vehicle, but further testified that he recalls her
22  specifically stating, No, I want my two new tires on the
23  front of the vehicle.  During that testimony he further
24  stated that at no point did he or any other Walmart
25  technician even look at the rear tires.  That was -- that

1  was during the interaction between he and I where we
2  discussed the placement of the two new tires on the front as
3  opposed to the rear.
4             We later come to find out that had the -- this is
5  his testimony -- that if the subject vehicle did have snow
6  tires on it, on the rear, at the time of the service, then
7  it was his belief that it was Walmart's procedure to place
8  the new tires on the front of the vehicle, as opposed to the
9  rear of the vehicle, and leave the snow tires on the vehicle
10 as is.  Obviously, my question thereafter was, Well, do you
11 understand that at the time of the accident there were snow
12 tires on the rear of the vehicle, believe there were snow
13 tires on the vehicle at the time of the service; therefore,
14 you would agree with me, sir, that based upon what you
15 believe Walmart policy to be this service was performed as
16 you would have recommended it be performed.  And he agreed
17 with that.  He agreed that he should have put the new tires
18 on the front, as opposed to the rear, if in fact snow tires
19 were on there.
20            And this leads us back to the circumstantial
21 evidence that I believe Walmart is missing here in their
22 argument for summary judgment on this issue.  For some
23 reason Walmart would like for this court to believe that
24 summary judgment should be granted on the issue of age,
25 unless plaintiffs can directly show evidence or directly

1       prove that these tires fifteen years or older or ten years
2       or older were on the vehicle at the time of the incident.
3       We obviously don't have direct evidence.  We don't have
4       pictures.  We don't have video of these tires being on the
5       vehicle at the time.  However, what we do have is very
6       credible indirect evidence of this and circumstantial
7       evidence of this.  And as the court very well knows, direct
8       and circumstantial evidence can be used to prove a claim or
9       it can be used to rebut a claim.  And that's exactly what we
10      have here, Your Honor.
11              It is circumstantial evidence that these tires
12      were on the vehicle at the time of the Walmart service if we
13      consider a number of things.  One, if we consider what I
14      just spoke about; Walmart's own employee saying that if snow
15      tires were on the vehicle on the rear, we would have placed
16      the new tires on the front.  Well, that's exactly what they
17      did.  And if these tires were on it, well, these tires were
18      snow tires, should I say, and snow tires pursuant to that
19      policy would have meant in their belief -- which is the
20      wrong belief and against Walmart policies, but it would have
21      meant that the workers who worked on this vehicle would have
22      placed the new tires on the front.  And that's exactly what
23      they did.  Again, circumstantial evidence that these tires
24      were on the vehicle.
25              Further circumstantial evidence of this, Your

1    Honor, is the fact that Mr. Sage testified that Kassondra,
2    his daughter, his young daughter, who knew very little about
3    cars, would not have had any work performed on this vehicle
4    without him knowing that.  She sought his counsel and advice
5    as it concerned any work that was performed on a car.  In
6    fact, he was a mechanic, Your Honor.  She would routinely go
7    pick up parts for him for his mechanic work; and in doing
8    so, she relied on her father for advice as to when or what
9    work should have been done.  And he testified unequivocally
10   to that too.  He stated that she would never have done any
11   work without him knowing and he never knew of this happening
12   or this occurring.
13           Further circumstantial evidence, Your Honor, in
14   showing that these tires were on the vehicle at the time of
15   service includes really the common sense of the -- of the
16   thought.  If we take Walmart's argument as truth that these
17   tires, these fifteen-year-old tires were not on the vehicle
18   at the time of service, that would mean that in February,
19   when that vehicle was serviced, sometime between then, and
20   we would claim that it would be July, sometime between then
21   and the incident in July Kassondra would have needed to
22   remove the tires that were on the vehicle and replace those
23   tires with older tires in worse condition and, more
24   importantly, put snow tires on while summer is either
25   approaching or there.  The common sense of that flies

1    against what we're looking at here in terms of the vehicle
2    maintenance and what Ms. Sage did in the past.
3              We know that the first order of business Ms. Sage
4    took up when she purchased this vehicle was to go to Walmart
5    on her father's recommendation and to have her tires
6    inspected and at least two of them replaced.  The fact that
7    that was her first order of business shows that Ms. Sage was
8    certainly conscious about the safety aspects of her vehicle.
9    And in knowing that, it flies in the face of logic to think
10   that Ms. Sage would then thereafter, having two new tires
11   put on her vehicle, albeit in the wrong place pursuant to
12   Walmart's work, but after having those two new tires put on
13   her vehicle, then travel somewhere and get two tires that
14   were in much worse condition than the original tire -- than
15   the original other two tires that remained on her vehicle
16   that Walmart did not service.
17             So as it concerns -- as it concerns the direct
18   evidence and the circumstantial evidence here, we have
19   plenty of it to get to a jury, and I would argue that we
20   have plenty of it to win at the time of a jury, but
21   Walmart's motion for summary judgment does not point to any
22   facts that -- excuse me.  Walmart's motion for summary
23   judgment doesn't in any way establish material facts that
24   are unsubstantiated or that are -- that are unknown that
25   would lead -- that would lead the court to grant their

1   motion.  Rather, what we have here is just fodder for direct
2   examination, for cross-examination and issues for the jury
3   to decide as opposed to the court at this point.
4           That's all I have, Your Honor, unless you have any
5   other questions.
6           THE COURT:  Okay.  Well, you still have about five
7   minutes on the clock.  So if you have anything more, I don't
8   want to cut you off.  I want to hear you out.
9           MR. BALL:  Well, Your Honor, I don't feel a need
10  to talk just because I have it; but if you have questions, I
11  will listen to you.  I am responding directly to
12  Ms. Brandt's arguments, and we will rest on our briefs as to
13  the other issues.
14          THE COURT:  Okay.  Well, the briefs were good, as
15  I said.
16          Ms. Brandt, rebuttal.  You've got ten minutes.
17          MS. BRANDT:  Thank you, Your Honor.  I don't think
18  I'll take all of it, but I do want to address a few things
19  that were raised by Mr. Ball.
20          THE COURT:  Well, and let me just tell you.  I'm
21  concerned about the causation issue.  And, you know,
22  Mr. Ball says, well, we're just relying on the general law
23  of negligence.  I think you argued differently than that.
24  And would you -- you know, and focus on the whole issue of
25  duty to inspect, duty to warn and whether in fact the

1   Walmart policy was in effect and would give rise to those
2   duties.
3               MS. BRANDT:  Absolutely.  Thank you, Your Honor.
4               THE COURT:  Okay.
5               MS. BRANDT:  I'm happy to address those issues.
6               First of all, the Walmart policy to which Mr. Ball
7   was addressing to the court was implemented in 2018.  So two
8   years after the time of the service to Ms. Sage's vehicle.
9   Now, we won't get into the reasons when and why -- or
10  excuse me -- how or why the policy was implemented, but what
11  Mr. Ball is attempting to do is tell the court that because
12  there was a policy that was implemented two years after the
13  date of service, that somehow creates a legal duty on the
14  part of Walmart in 2016.  There are a couple of problems
15  with that argument.  First of all, it's obvious that the
16  policy was not in place at the time of the service on
17  Ms. Sage's vehicle.
18              The second issue with that is that Walmart's
19  internal policy does not set the legal standard or the
20  legal -- or create a duty, a legal duty on the part of
21  Walmart.  If that were true, then what we need to do is we
22  need to look at what was the policy and what were the
23  practices of Walmart at the time of the service in 2016.
24  And in 2016 on the date of this service Walmart did not have
25  a policy and did not have a practice of checking the age of

1  the tires.
2              So if -- I don't think that this is correct, that
3  you judge the defendant by its own internal policies, but if
4  that were -- if that's what plaintiff's argument is, then it
5  followed its own internal policies as of 2016, which is it
6  did not inspect the -- it did not identify or inspect the
7  age of tires.
8              Now, specifically, what we know in this case is
9  that Ms. Sage requested that two new tires be put on the
10 front axle of her vehicle, and that is the service that was
11 performed by the Walmart technicians on that date.
12             The other thing that we know is that the service
13 order -- the service order that Walmart generated and gave a
14 copy to Ms. Sage at the end of the service, it makes it
15 clear that the only work that was done was on the front
16 axle, with the exception of checking the tire pressure on
17 the rear tires, and it also specifically states that the
18 other tires were not inspected.
19             So Walmart informed Ms. Sage that it was not
20 inspecting the rear tires.  If she wanted them inspected,
21 she could have requested that service.  She did not.  And
22 Walmart did not perform it.  And Walmart made it clear to
23 her that it did not perform that issue -- that particular
24 service of inspecting the rear tires.
25             So plaintiff is trying to create a duty related to

1     a service that Walmart, number one, did not perform and,
2     number two, advised Ms. Sage that it did not perform.
3                 Does that answer your questions as it relates to
4     the duty issue?
5                 THE COURT:  Well, it's your answer to the
6     question, and that's all I'm going to say.  Yes, you know,
7     you responded to it.  Thank you.
8                 MS. BRANDT:  Okay.  And I know that you are less
9     focused on the issue of whether the tires were on the
10    vehicle on the date of service, but I do need to respond to
11    the issue of why would somebody put these old tires on the
12    vehicle.
13                THE COURT:  Well, go ahead and respond directly to
14    that.  You still have enough time, I think.  Go.
15                MS. BRANDT:  Okay.  Thank you.
16                So what we know, what is undisputed is that -- one
17    of the prior owners was deposed in this case.  His name is
18    Mr. Ladoux, L-A-D-O-U-X.  And he donated the vehicle in
19    2014.  He indicated that he had never put snow tires on the
20    vehicle.  So what we know is that sometime between 2014 and
21    the accident in 2016 someone put really old snow tires on
22    this vehicle.  What we don't know is when in that 18-month
23    or two-year time period those snow tires were put on the
24    vehicle.  And there is no better evidence to tell us that
25    they were put on before the service than there is evidence

1  to tell us they were put on after the service.

2  I agree with Mr. Ball that it is not a reasonable
3  thing to put 2001 snow tires on a vehicle in the year 2014,
4  '15 or '16, but we don't know.  There is no evidence of when
5  those tires -- it's equally absurd -- as absurd to put them
6  on after the accident as it is before -- or excuse me --
7  after the service as it is before.  So there is just no
8  admissible evidence of when those tires were placed on the
9  vehicle.

10  And the other thing is Ms. Sage was -- did
11  mechanical work herself.  And so to come back in and say
12  there's no possible way she could have done something with
13  those tires without telling her father is just pure
14  speculation.  She did not live with him.  She was 19 years
15  old.  She had auto parts in her -- receipts for auto parts
16  in her glove box for parts that were not for her vehicle,
17  but her father did not know what they were for.  She could
18  have been doing other auto work.  But it just furthers the
19  point that it would be sheer speculation to say that those
20  tires were on the vehicle on the date of service.

21  And because plaintiff cannot show that and has not
22  established that there's a legal duty, Walmart asks that the
23  court grant its motion for summary judgment.

24  THE COURT:  Okay.  Thank you.
25  Well, both of you left time on the clock.

1  That's -- maybe in the courtroom people use up more time.
2  I'm not sure.  We seldom have this happen.  And I always
3  congratulate lawyers for cutting their arguments to the bone
4  and getting right to the point, which both of you did.  I
5  appreciate that a lot.
6              As I said already, the briefs were good.  I think
7  we know what the case is about, legally and factually, as
8  much as we need at this point.  And I'm going to take it
9  under advisement.  We will let you know how we decide.
10 Thank you.
11             And all stay healthy, stay well and have a great
12 Thanksgiving.
13             MR. BALL:  Thank you, Your Honor.  You too.
14             MS. BRANDT:  Thank you, Your Honor.
15             MR. CONLIN:  Thank you, Your Honor.  Bye bye.
16             THE COURT:  Court's going to stand in recess.
17             THE CLERK:  All rise.
18        (Court adjourned at 11:27 a.m., 11-23-2020.)
19                          *  *  *
20        I, Renee A. Rogge, certify that the foregoing is a
21 correct transcript from the record of proceedings in the
22 above-entitled matter.
23                   Certified by:  /s/Renee A. Rogge
                                    Renee A. Rogge, RMR-CRR
24
25